[No. 17348. Department One. September 29, 1922.]

GEORGE W. HOPP, *Respondent*, v. M. E. CARSON *et al.,*
*Appellants.*[1]

COUNTIES (71)—PUBLIC DEBT—SPECIAL FUNDS—DIVERSION—
POWERS OF COUNTY BOARD—STATUTES. The county commissioners
of Clarke county must preserve the net toll income from the inter-
state bridge bonds to retire the bonds, and can not use any part
of the same on highway work, under Rem. Comp. Stat., § 6545,
amending and re-enacting the provisions of Laws 1919, p 203, § 1,
creating a county bridge fund for the Clarke county interstate
bridge, which amendment requires tolls received after June 1, 1921,
to be kept separate and used for operating expenses, interest and
retirement of the construction bonds.

Appeal from a judgment of the superior court for
Clarke county, Simpson, J., entered September 6, 1921,
in favor of the plaintiff, upon overruling a demurrer
to the complaint, in an action for an injunction. Af-
firmed.

*Joseph E. Hall,* for appellants.

*Miller, Wilkinson & Miller,* for respondent.

TOLMAN, J.—Respondent, as plaintiff below, charged
in his complaint that, in 1913, the county of Clarke was
authorized by a vote of the electors to incur a bonded
indebtedness in the sum of $500,000, the proceeds of the
bond issue to be used in the construction of an inter-
state bridge across the Columbia river at Vancouver;
that the bonds were issued and sold, and the moneys
thus realized were used, in conjunction with moneys
provided by the county of Multnomah, Oregon, in the
erection of a bridge costing $1,250,000; that the bonds
so issued are still outstanding to the extent of $450,000;
that the legislature, by Laws of 1915, ch. 22, p. 52, § 7,
authorized the fixing and collection of tolls for the use

[1]Reported in 209 Pac. 525.

of such a bridge as here described, and pleaded the legal effect of § 7 of the act, which reads:

"Sec. 7. The monies collected shall be kept by the county treasurer in a separate fund and shall be known as the interstate bridge fund and shall be used for the purpose of paying for the operating expenses of any such interstate bridge, and in case any such county is required to pay interest on any bonded indebtedness then to be applied upon the payment of such interest, and the remainder shall be applied toward a sinking fund to redeem any bonded indebtedness that may have been created for the construction of such bridge; or if there be no such indebtedness, then the remainder shall go into the road and bridge fund of the county: *Provided,* That the monies collected from such tolls can only be expended upon warrants drawn by order of the county commissioners."

The complaint also pleaded, in effect, the amendment of 1919 (Laws of 1919, ch. 88, p. 203, § 1), which reads:

"Section 1. That section 7 of Chapter 22 of the Laws of 1915 be amended to read as follows:

"Section 7. The moneys collected shall be kept by the county treasurer in a separate fund and shall be known as the interstate bridge fund and shall be used for the purpose of paying for the operating expenses of any such interstate bridge, and in case any such county is required to pay interest on any bonded indebtedness for the construction of such interstate bridge then to be applied upon the payment of such interest, the remainder of any such sum in the hands of the county treasurer may until June 1st, 1921, be expended upon the public highways of the county for the permanent improvement or hard surfacing of the highways of the county under the direction and control of the county commissioners: *Provided,* that the moneys collected from such tolls can only be expended upon warrants drawn by order of the county commissioners, and the money used for permanent improvement of the highways shall be expended under the direction of the county commissioners and shall be

used only for permanent improvement: *Provided, further,* that not more than one-fourth (¼) of said remainder of said moneys may be expended so as to form continuous improved highways leading to the approach of said interstate bridge and to this end such counties and the commissioners thereof are hereby authorized to use one-fourth (¼) of the remainder of moneys aforesaid in the improvement of any arterial highway or highways leading to such interstate bridge within the limits of any incorporated city or town." Rem. Comp. Stat., § 6545.

And further charged:

"That the county commissioners of Clarke County, Washington, are now threatening to continue after June 1st, 1921, to expend the remainder of the monies collected from the tolls of such interstate bridge, which amounts annually to a large sum, upon the public highways of the county for permanent improvement or hard surfacing of the highways of the county under the direction and control of the county commissioners of the county, and to that end have passed a resolution of intention of using the funds so derived for such purposes and unless restrained by the court will use the money for such purposes notwithstanding that there is a bonded indebtedness of the county amounting to $450,000 incurred for the construction of such interstate bridge."

To this complaint the defendant county commissioners, appellants here, demurred. The demurrer was overruled. The defendants elected to stand on their demurrer, and a judgment permanently restraining them as county commissioners from expending any of the funds derived from tolls earned by the bridge for the permanent improvement of highways was thereupon entered. This appeal followed.

While it is true that the bonds are general obligations of the county issued before the taking effect of the act of 1915, and are not by that act specifically

made a lien or charge upon the fund arising from the collection of tolls, still the legislature, having unquestioned power so to do, by that act created a separate and distinct fund into which all such moneys were directed to be paid, and provided specifically the purposes for which the fund should be used. The amendment of 1919 does not in any way change or abolish the special fund; in fact that portion of the prior statute is reenacted. But it does provide that, for a limited and certain period, after paying the operating expenses and interest on the bonded indebtedness, the surplus, if any, may be used for the permanent improvement of highways.

We find it unnecessary to discuss the interesting argument of counsel as to whether or not the amendatory act operated as a repeal of that portion of the original section which was omitted from the amendment, because it seems clear to us that, by both the original and amended acts, a special fund to be known as the "Interstate Bridge Fund" was created, and the moneys derived from tolls were required to be deposited and kept therein. The money thus derived, now as formerly, must be so deposited, and having been so deposited, it can only be withdrawn from that fund and expended as the law may direct.

The amendatory act of 1919, for the period expiring June 1, 1921, permitted the surplus, after payment of operating expenses and interest, to be expended in permanent highway improvement. That permission having expired by limitation, the right to so expend no longer exists. The fund exists, and the duty to put the tolls income into the fund still exists and must be recognized. Hence the judgment of the trial court was correct.

We are not now concerned with the possibility that there may prove to be money in the fund, now or at

some future time, with no legal means of withdrawing and expending it. If such should prove to be the case, the legislature can readily provide the proper remedy.

The judgment appealed from is affirmed.

PARKER, C. J., MITCHELL, BRIDGES, and FULLERTON, JJ., concur.